**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Frank Nick ZIZZO, Alexander Stasnick, Hugo A. Lazzareschi and Walter Wojciechowski, Defendants-Appellants.**

**No. 14411.**

United States Court of Appeals
Seventh Circuit.

Oct. 19, 1964.

Rehearing Denied Dec. 16, 1964.

Maurice J. Walsh, Edward J. Calihan, Jr., Chicago, Ill., for appellant.

Herbert J. Miller, Jr., Asst. Atty. Gen., Sidney M. Glazer, Atty., U. S. Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Beatrice Rosenberg, Allen J. Krouse, Dougald D. McMillan, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, DUFFY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

The defendants were indicted in a twenty-count indictment. Counts 2 through 19 charged violations of Sections 1952 and 2, Title 18 U.S.Code, in that they did travel in interstate commerce with intent to carry on an unlawful activity, to-wit: gambling and aiding and abetting the same.

Count 1 charged the defendants with conspiring to violate Section 1952, Title 18 U.S.Code. However, all defendants were acquitted of this charge at the close of the evidence.

Count 20 charged a violation of Sections 203 and 501, Title 47 U.S.Code. This charge was dismissed on motion of the Government.

Counts 10, 11 and 12 were dismissed by the Court on motion of the Government at the close of the Government's evidence.

The jury returned verdicts convicting defendant Zizzo on Counts 2 through 9, and 13 through 20; defendant Stasnick on Counts 2 through 8; defendant Lazzareschi on Counts 17 through 19, and defendant Wojciechowski on Count 9 and Counts 13 through 16.

In 1961, defendant Zizzo operated a gambling business (referred to as "bookmaking") at various addresses in Indiana. Zizzo did not leave the state of Indiana in connection with the operation of his business.

The co-defendants of Zizzo were employees in the operation of his gambling business. They took bets for Zizzo at various locations in Hammond, Indiana, such as South Shore Recreation, Hessville Recreation, Wright's Inn and Nardi's. Bets were often phoned in to Zizzo who maintained headquarters in a back room at Nardi's Confectionery, 119th Street, Whiting, Indiana.

As required by Indiana law, Zizzo filed Indiana Employers' Withholding Tax Return Forms. For 1961, this return listed Wojciechowski, Lazzareschi and Stasnick as Illinois residents. A similar return for 1962 gave Illinois addresses for Wojciechowski and Lazzareschi.

In July 1961, Zizzo signed and filed a Federal Wagering Tax Registration form which stated that Wojciechowski lived at a Chicago, Illinois address. Places that Zizzo rented in Hammond were listed as the resident address of two of the co-defendants. Zizzo paid the tax for nine employees including Stasnick, Lazzareschi and Wojciechowski.

In May 1962, Wojciechowski told an FBI agent his true address was in Chicago but that he used a designated address in Hammond at the suggestion of his employer. The testimony also showed that Stasnick informed an FBI agent that he used an Indiana address while actually living in Chicago.

Defendants vigorously attack the constitutionality of 18 U.S.C. § 1952. They urge that the statute, if construed broadly, constitutes an exercise of power not delegated to the United States, and violates the privileges and immunities of the citizens of the states and of the United States. They also argue the statute is unconstitutionally vague.

18 U.S.C. § 1952 provides, in pertinent part, as follows:

"Interstate and foreign travel or transportation in aid of racketeering enterprises

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion or bribery in violation of the laws of the State in which committed or of the United States.

\* \* \* "

The theory of the Government as to the conviction of Zizzo is that the proof clearly established that Zizzo's gambling operations in Indiana were the inducement for the interstate travel of his employees who lived in Illinois; that Zizzo thus aided and abetted his three co-defendants in that travel and in their engaging in illicit gambling operations in Indiana; that when they crossed the Illinois-Indiana state line, they had the requisite intent to engage in the illegal activity, and that they did, in fact, as employees of Zizzo, receive moneys placed on bets, and did telephone bets to Zizzo's headquarters.

The theory of the Government as to the conviction of defendants Stasnick, Lazzareschi and Wojciechowski is that they were residents of Illinois and travelled in interstate commerce with the requisite intent of assisting Zizzo in carrying on the promotion of an unlawful activity, to-wit: a gambling operation, in the state of Indiana.

The principal arguments of the defendants are: 1) the statute is unconstitutional; 2) that certain documents which were filed pursuant to one federal statute were used as incriminating confessions in a prosecution under another federal statute; 3) that the court erred in denying a motion to suppress such evidence; 4) that innocuous travel by three defendants to and from their homes was inconsequential to the conduct of the unlawful activity and was not within the prohibition of the statute; 5) that the Government prosecutors were guilty of prejudicial misconduct in expressing opinions as to the guilt of the accused; 6) that defendants were entitled to examine the master FBI report; and 7) the Court erred in refusing to give certain instructions.

■■■ We hold the statute here under consideration is constitutional. We think the Congress had the power, under the Commerce Clause, to make it unlawful to travel from one state to another to promote a gambling enterprise which was illicit by the laws of the state where the gambling was carried on.

On April 18, 1961, Bill S 1653 [1] was introduced in Congress largely at the in-

1. The identical House Bill was H.R. 6572.

stigation of the Attorney General. Its title was "Interstate and foreign travel in aid of racketeering." This bill provided that it would be an offense for anyone to travel in interstate or foreign commerce with intent to commit any act proscribed in the statute. The bill did not require that any act be committed subsequent to the interstate travel. An amendment was adopted providing that a person who travels interstate and who "thereafter performs or attempts to perform" an act pursuant to the evil intent proscribed, would be punished. The title of the bill was changed to "Interstate and foreign travel or transportation in aid of racketeering enterprises." (S.Rep. No.644, 87th Cong., 1st Sess., p. 2)

The Committee report quoted from the testimony of the Attorney General before the Committee. From this it appears the purpose of the bill was to curtail those involved in gambling, narcotics, prostitution and several other crimes, by making unlawful interstate travel in furtherance of such activities. The report quoted the Attorney General—"Obviously we are not trying to curtail the sporadic, casual involvement in these offenses, but rather a continuous course of conduct sufficient for it to be termed a business enterprise." (Id., p. 3)

In the instant case, all of the defendants were involved and connected with a continuing business enterprise which was illegal under the laws of the state of Indiana.

■ Zizzo strongly contends he personally did not travel in interstate commerce in running his business, and that he did not have anything to do with the interstate travel of the other defendants. He argues he did not aid nor abet the interstate travel of his co-defendants and, in fact, did not know that such interstate travel occurred.

A somewhat similar contention was made in Bass v. United States, 8 Cir., 324 F.2d 168. Bass and four of his employees lived in Tennessee. The gambling house which Bass operated was located across the river in the state of Arkansas. Bass and his employees travelled to and from their homes in Tennessee to the gambling establishment in Arkansas. There was no direct evidence that Bass aided or abetted or caused or induced his employees to travel interstate, or that he sought them out and procured them to work for him. Bass argued that each of the four employees crossed the state line of his own volition. The Eighth Circuit upheld the convictions and concluded " * * * that Bass actually furnished the four with employment and thus induced their interstate movement." Bass v. United States, 324 F.2d 168, 171.

Here, it is undisputed that defendants Stasnick, Lazzareschi and Wojciechowski travelled almost daily from Illinois to Indiana to assist and promote the bookmaking activities of Zizzo. It is clear that the gambling business operated by Zizzo caused the interstate travel by the three employees. In the Federal Wagering returns and the Indiana tax returns signed by Zizzo, he gave Illinois addresses for his three employees who are co-defendants. A jury could properly infer that Zizzo knew the homes and places of residence of these three employees were in the state of Illinois.

■ Defendants contend that since Zizzo was required, by law, to file returns, their use as evidence in the instant case violated the privilege against self-incrimination. Defendants cite the dissenting opinions in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475.

Two of the three Justices who dissented in Kahriger and Lewis are still on the Court. However, as far as we are advised, the Supreme Court has never adopted the views expressed in the dissenting opinions as the view of the Court. We think Kahriger and Lewis stand for the proposition that the privilege of self-incrimination does not render incompetent as evidence, information which the law has compelled an individual to furnish in the past.

In early 1961, the FBI began an investigation of defendant Zizzo, a person who was reputed to be involved in bookmaking activities. In July 1961, Zizzo registered and paid for himself and his employees, the federal occupational tax imposed on wagering. This form disclosed that Wojciechowski lived in Illinois. It also showed Indiana addresses for Lazzareschi and Stasnick, but other evidence showed these Indiana addresses were not residences but places where bookmaking operations were conducted. In September 1961, the instant statute was enacted.

At the trial, the occupational tax returns were introduced in evidence to show defendant Zizzo knew that Wojciechowski lived in Illinois and, as circumstantial evidence, that Zizzo knew that Stasnick and Lazzareschi did not live at the Indiana addresses listed on the return.

We think pertinent is a statement of the Supreme Court in Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 417–418, "If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment."

We hold that it was not error to receive the returns in evidence, and that defendant Zizzo was not deprived of any of his constitutional rights thereby.

Agent Doyle, the agent in charge of the FBI investigation, was the last of seven FBI agents to testify. At the conclusion of his direct examination, defendants asked for "compliance with 3500." [2]

The Government turned over to defendants the statements covering the interviews with Stasnick and Wojciechowski, the only reports Doyle had made of the interviews. The Government also turned over eighteen log reports—original notes—and six statements on forms known as FD 302 which were memoranda prepared from the logs. Defendants then demanded the right to examine the entire seven investigative reports. The trial judge examined these reports in camera, utilizing some two hours in so doing. He compared the investigative reports with the FD 302 forms and the logs that had already been produced. The trial judge stated he was unable to find any matters other than copies of the originals which already had been produced.

"Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." Palermo v. United States, 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287.

We hold it was not error for the trial court, after examining the investigative reports, to deny defendants' motion to examine same.

In the final argument, attorney for the Government asserted that every society regulated gambling "because gambling is power, and you get that power, you get that political power * * *." Defendants' counsel interrupted with an objection, and the trial court sustained the objection and denied a motion for a new trial. Later, the prosecutor referred to parasites who "are stealing * * * from every one of you." When defendants objected to the reference to stealing, the trial court not only sustained the objection but instructed the jury to disregard the remark. Considering that a cautionary instruction was given, we hold, under the facts of this case, that neither of the prosecutors' remarks hereinbefore described constitutes a basis for reversal.

Defendants urge that there were errors in the instructions. We have carefully examined these contentions and find them to be without merit.

2. Defendants undoubtedly referred to 18 U.S.C. § 3500 and it was so understood by all concerned.

We hold it was permissible for the jury to infer from the evidence that Zizzo's gambling operations in Indiana were the inducement for the interstate travel by Stasnick, Lazzareschi and Wojciechowski; that Zizzo knew his co-defendants lived in the state of Illinois and to carry out the duties of their employment, they would necessarily have to cross the Illinois-Indiana state line; that Zizzo thus aided and abetted the three in their almost daily interstate travel in order to promote, carry on and facilitate the unlawful gambling activity in Indiana.

Defendants have advanced several other arguments but we do not consider that they merit discussion.

As the verdicts were supported by substantial evidence, the District Court correctly denied the motion for acquittal, and the judgments of conviction must each be and are

Affirmed.