**UNITED STATES of America**

v.

**Phillip C. IZLAR.**

**Crim. No. 952–68.**

United States District Court
District of Columbia.

Dec. 19, 1968.

———◆———

James E. Kelley, Jr., Asst. U. S. Atty., Washington, D. C., for plaintiff.

William R. Hill, Jr., Legal Aid Agency, Washington, D. C., for defendant.

1. Defendant Izlar had been convicted of Assault with Intent to Commit Robbery in Criminal Case No. 151–63 on May 6,

MEMORANDUM

SIRICA, District Judge.

Defendant, desiring to purchase a shotgun in the District of Columbia, was required, as all such applicants are, to fill out P.D. 151–A, a police application form. He disclosed on that form his name, address, occupation and attested to the fact that he was not in that class of persons forbidden to purchase firearms. Although he had been previously convicted of a crime of violence[1] and was consequently in that group proscribed from possessing firearms, defendant falsely filled out the form, attesting that he was allowed to possess firearms, and purchased the shotgun.

He was subsequently indicted for violation of the Federal Firearms Act, 15 U.S.C. § 902(e) and (f) which makes it a crime to possess a shotgun after conviction for a felony. Defendant has moved this Court to dismiss the indictment on the ground that the police regulatory system which formed the basis for his arrest violates the Fifth Amendment of the United States Constitution.

Defendant contends that the disposition of this motion is controlled by the Supreme Court's decision in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). In considering this contention, the factual posture of this case as it appears to the Court is significant. Defendant is not directly attacking form P.D. 151–A. He willingly and knowingly completed that form although falsely. Nor is he defending a prosecution for falsely executing the form. He has not been charged with that offense. He is being charged with illegal possession of the shotgun, an offense which is connected to P.D. 151–A by virtue of the fact that the form is a link in the chain of evidence against the defendant. Thus this case is distinguishable on its facts from Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United

1968. See 22 D.C.Code Ann. § 3201 (1967 ed. Supp. I).

States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968); and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968). In those cases the constitutional attack was directed to the incriminating material. In *Marchetti* and *Grosso* the defendants challenged as incriminating the gaming occupational tax and registration forms (26 U.S.C. §§ 4411, 4412) and in *Haynes* the firearms registration provisions required by 26 U.S.C. §§ 5841, 5851. In those recent cases the defendants were prosecuted for failing to complete the incriminating material, thus making the nature of the form an issue directly before the Court. In this case defendant's attack on the application form is one step removed. He contends that the use of the voluntarily filled out form as a link in the chain of evidence against him is a fatal defect to prosecution under the illegal possession section of the National Firearms Act. The defendant has presented this Court with no authority to support his argument. In Irvine v. California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954), the Supreme Court specifically allowed the fruits of an incriminatory registration—a tax stamp and registration form—to be admitted in a subsequent state prosecution for violation of the local gambling laws. Cf. United States v. Zizzo, 338 F.2d 577, 580 (7th Cir. 1964); Grimes v. United States, 379 F.2d 791 (5th Cir. 1967). While this practice was commented on in Marchetti v. United States, 390 U.S. at 47 n. 7, 88 S.Ct. at 702, as a reason for prohibiting the compulsory registration, no mention of an infirmity in the subsequent prosecution is found in that decision. The issue in *Marchetti* was the *completion* of the form and not *the use* of the completed form. Defendant's reliance, therefore, on Marchetti v. United States is ill-founded.

Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) likewise offers no support to the defendant. In that case appellant, a police officer was required to report to the court, acting in an investigatory capacity, about certain "fixed" traffic tickets under threat of dismissal from the force. He made several incriminating statements and was subsequently prosecuted and convicted, on the basis of the information he supplied, for conspiracy to obstruct the administration of the traffic laws. The Supreme Court, applying the "rock and whirlpool analogy", Frost & Frost Trucking Co. v. Railroad Commission, 271 U.S. 583, 593, 46 S.Ct. 605, 70 L.Ed. 1101 (1926), reversed, finding that the statements made before the Court during the investigation were involuntary, and therefore subsequently inadmissible. *Garrity* is distinguishable from the instant case in several respects. The defendant in *Garrity* was coerced into making admissions about prior illegal acts. In *Izlar* defendant was not required to make incriminating statements, but to merely identify himself. In *Garrity* the defendant was coerced by the threat of loss of livelihood, if he did not divulge the desired facts. In *Izlar* refusal to fill out the form merely would have resulted in defendant not being able to purchase a shotgun [possession of which was violative of the Federal Firearms Act, since he had previously been convicted of a felony]. In *Garrity* the defendant's admissions resulted in prosecution and conviction. In the case before this Court Izlar's statement would not have subjected him to prosecution, had he not lied on the form. Therefore, I find the holding in *Garrity* inapplicable to this case.

■ The defendant did not expressly incriminate himself by completing P.D. 151–A, since he denied that he had ever been guilty of a felony. The incriminatory aspect of the form was the disclosure of defendant's name as the prospective purchaser on the form. The Police Department processed his name, found that a person of like name had been convicted of a violent felony, verified the handwriting to determine whether the purchaser and the former violator were one and the same person, and initiated the prosecution when the similarity of signatures was established. The question, therefore, is whether the mere disclosure

by the defendant of his name is within the ambit of protection accorded by the Fifth Amendment. It must be noted that the objection is limited to the disclosure of identity. The eliciting of a handwriting exemplar is real evidence and outside the privilege. In Gilbert v. United States, Mr. Justice Brennan writing for the Court said:

> One's voice and handwriting are, of course, a means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection.

Gilbert v. United States, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); see United States v. Wade, 383 U.S. 218, 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1963). In this case while the critical disclosure by the defendant had significance by virtue of its substance rather than its form, it is not so much a disclosure of guilt as it is an identifying characteristic, although not a physical one. If a defendant can be required to "exhibit his physical characteristics," United States v. Wade, 388 U.S. at 222, 87 S.Ct. 1926, or wear a blouse, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, or submit to a blood sample, Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), he can be required to disclose his name. The request was intended to identify him and did not require him to speak his guilt, See United States v. Wade, 388 U.S. at 222, 223, 87 S.Ct. 1926.

■ There remains a further reason why the defendant's statement falls outside the scope of the privilege. The application form was not incriminatory when filled out in a truthful fashion. In *Marchetti* if the defendant had filled out the required forms the information constituted an admission potentially prejudicial to the defendant in a state court proceeding. If he failed to execute the form he was subject to federal prosecution under 26 U.S.C. § 4412. He was in effect in a damned if he did and a damned if he didn't position. In the instant case he would in no way jeopardize himself. He would merely be precluded from buying the firearm. The defendant's self-incrimination is a product of an untruthful statement on the application form. It can scarcely be contended that the scope of the privilege encompasses such a situation and such a defendant. Cf. Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (use of evidence for impeachment which is the product of illegal search); Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960).

For the foregoing reasons, the motion to dismiss the indictment is denied. Counsel will submit an appropriate order.